1  ZACHARY E. ZWERDLING (CSB 73288)
   zztop@zbmlaw.com
2  BENJAMIN H. MAINZER (CSB 257748)
   bmainzer@zbmlaw.com
3  **ZWERDLING, BRAGG & MAINZER, LLP**
   804 Third Street
4  Eureka, CA 95501
   Telephone: (707) 445-9628
5  Fax No.: (707) 443-0442

6  Attorneys for Plaintiffs

7

8              **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10

11  JAMES GUND AND NORMA GUND,          Case No.:

12                      Plaintiffs,
                                        **COMPLAINT FOR VIOLATION OF**
13          vs.                         **CIVIL RIGHTS (42 U.S.C. § 1983)**

14  COUNTY OF TRINITY, CALIFORNIA, a    **DEMAND FOR JURY TRIAL**
    local government entity; CORPORAL RON
15  WHITMAN, SHERIFF BRUCE HANEY,
    DOES 1-40 inclusive,

16                      Defendants.
   _____/
17

18      Plaintiffs James Gund and Norma Gund for their complaint against Defendants County of

19  Trinity, Corporal Ron Whitman, Sheriff Bruce Haney and DOES 1 through 40 hereby allege as

20  follows:

21                          **INTRODUCTION**

22      1.  On or about March 13, 2011, Trinity County Sheriff's Corporal Ron Whitman was

23  advised that a 911 call had been made by a female caller who stated she was located at the end of

24  the Kettenpom airstrip–an airstrip located within a remote part of Trinity County, Califorina.

25  Corporal Whitman was advised that the female caller had been whispering "help me" repeatedly and

26  was further advised that the California Highway Patrol (CHP) dispatcher who had initially had taken

27  the call believed that the female caller was attempting to avoid being heard.  Corporal Whitman was

28  also informed that efforts to call back the female caller had been unsuccessful.

    2.  Despite the apparent seriousness of the call and the obvious danger that would be

associated with responding to the 911 call, Corporal Whitman elected to call two civilians, James and Norma Gund, who had no law enforcement training or experience, and ask that they check on the caller.  Corporal Whitman did not advise the Gunds of the seriousness of the call, nor did he inform the Gunds that the caller had been whispering help me repeatedly, nor did he inform the Gunds that the caller was currently unreachable, nor did he inform the Gunds that the dispatcher who took the call believe the caller was attempting to avoid being heard.  Moreover, Corporal Whitman told the Gunds that the reason for the 911 call was likely weather related.  Relying on the misrepresentations made by Corporal Whitman, the Gunds agreed to go check on the caller.  Having no fear given Corporal Whitman's representations, the Gunds entered the residence of the caller and were each violently and savagely attacked by the man who had just murdered the female caller and her boyfriend.  James Gund and Norma Gund bring this action to redress the violations of their civil rights and the negligence of Corporal Whitman and the County of Trinity.

## JURISDICTION AND VENUE

3.  This action, filed to redress the violation of James Gund's and Norma Gund's rights under the Fourteenth Amendment to the United States Constitution, arises under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

4.  This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367.

5.  Venue is proper in this district under 28 U.S.C. § 1331(b) because the Defendants reside in this district and because a substantial part of the events or omissions giving rise to this claim occurred in this district.  Per Eastern District Local Rule 120(d), intradistrict venue in Sacramento is proper.

## PARTIES

6.  At all times herein mentioned, Plaintiff James Gund was a resident of Trinity County, California.  Defendants' conduct in relation to Plaintiff James Gund hereinafter alleged occurred in Trinity County, California.

//

/

7.  At all times herein mentioned, Plaintiff Norma Gund was a resident of Trinity County, California.  Defendants' conduct in relation to Plaintiff Norma Gund hereinafter alleged occurred in Trinity County, California.

8.  Plaintiff James Gund and Plaintiff Norma Gund are legally married to each other.

9.  Defendant Trinity County is a local government entity.  At all relevant times, the Trinity County Sheriff's Department was a department or agency of Defendant Trinity County. Trinity County is a public entity as defined by California Government Code section 811.2.

10. Defendant Corporal Ron Whitman ("Whitman") at all times herein mentioned was a resident of Trinity County, California and was a public employee of Defendant Trinity County, to wit a deputy sheriff, as defined by California Government Code section 811.4.

11.  At all times herein mentioned, Defendant Whitman was the employee of Defendant Trinity County.  In doing the things alleged herein, Defendant Whitman was acting within the course and scope of this employment and was acting with the consent, permission and authorization of Defendant Trinity County.

12. Defendant Sheriff Bruce Haney ("Haney") at all times herein mentioned was a resident of Trinity County, California and was a public employee of Defendant Trinity County, to wit, the  Sheriff of Trinity County, as defined by California Government Code section 811.4.

13.  At all times herein mentioned, Defendant Haney was the employee of Defendant Trinity County.  In doing the things alleged herein, Defendant Haney was acting within the course and scope of this employment and was acting with the consent, permission and authorization of Defendant Trinity County.

14.  Defendant Haney, as Sheriff of Trinity County, was responsible for training and supervising his subordinates and for ensuring the Trinity County Sheriff's Department adopted and enforced proper policies and procedures to protect civilians to the greatest degree possible.

15.  Plaintiffs are ignorant of the true names or capacities of the Defendants sued herein under the fictitious names Doe 1 through Doe 40, inclusive.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

/

16.   Plaintiffs are informed and believe that each of the Doe Defendants was responsible in some manner for the occurrences and injuries alleged in this complaint.  At all times herein mentioned, Doe Defendants 1 through 40 were California residents.

17.   At all relevant times, DOES 1-20 were the employees or agents of Defendant Trinity County and at all relevant times were acting within the course and scope of their employment. DOES 1-20 had knowledge of the acts, conduct and operative information available to Defendant Whitman when Defendant Whitman engaged in each of the acts alleged in this complaint.

18.   At all relevant times, DOES 21-40 were the employees or agents of Defendant Trinity County and at all relevant times were acting within the course and scope of their employment.

19.   At all relevant times, DOES 21-40 had knowledge that persons employed by the Trinity County Sheriff's Department had, prior to March 13, 2011, asked civilians to assist them in responding to possible emergency situations and therefore knew or should have known that policies or procedures governing requesting that civilians respond to 911 calls were needed in order to prevent injury to citizens.

20.   DOES 21-40 had at all relevant times the authority to create, change or modify the training, instruction, policies, departmental practices, standard operating procedures and customs of Trinity County Sheriff deputies and the ability to approve or ratify the conduct of Trinity County Sheriff deputies.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

21.   This claim arises out of an incident that occurred on or about March 13, 2011 in Kettenpom, California, County of Trinity.

22.   During the course of this incident, Plaintiff James Gund and Plaintiff Norma Gund sustained serious life-threatening injuries during an attack perpetrated by Tomas Gouverneur who brutally assaulted Plaintiffs with a taser gun and a knife.

///

//

/

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DEMAND FOR JURY TRIAL

1    23.  Plaintiffs are informed and believe that on or about March 13, 2011, Tomas

2    Gouvernour attacked and murdered Kristine Constantino and Christopher Richardson, two

3    individuals living in a house approximately one quarter mile from the Gund residence in close

4    proximity to the Kettenpom airstrip.

5    24.  On or about March 13, 2011, at approximately 15:28:13, the California Highway

6    Patrol (CHP) received a 911 call originating in the vicinity of the Kettenpom airstrip.  The female

7    caller was whispering "help me" over and over.  When the CHP dispatcher, Amy Walker,

8    prompted the caller for her location, the female caller stated she was at the end of the Kettenpom

9    air strip.

10   25.  CHP dispatcher Walker, for purposes of responding to the call, contacted the Trinity

11   County Sheriff's  Department and alerted a Trinity County dispatcher, Kathy Morrison, to the

12   call.

13   26.  CHP dispatcher Walker communicated to Trinity County dispatcher Morrison that

14   the female caller was whispering "help me" over and over and that when CHP dispatcher Walker

15   had prompted the caller for her location, the female caller stated she was at the end of the

16   Kettenpom air strip.

17   27.  CHP dispatcher Walker also communicated to Trinity County dispatcher Morrison

18   her opinion that the 911 caller had been whispering in an attempt to avoid being heard.

19   28.  After receiving the aforementioned information from the CHP, Trinity County

20   dispatcher Morrison tried to dial the telephone number provided to the CHP dispatcher by the

21   unknown female caller.  Trinity County dispatcher Morrison was unable to reach the caller as

22   there was no answer at the telephone number the caller had previously provided.

23   29.  Trinity County dispatcher Morrison then communicated to Defendant Trinity County

24   Sherriff's Corporal Ron Whitman what had transpired.

25   30.  Soon thereafter, Defendant Corporal Ron Whitman called Plaintiffs who resided in a

26   home approximately one quarter mile from the Kettenpom airstrip.

27   //

28   /

31. During the conversation between Defendant Whitman and Plaintiff Norma Gund, Defendant Whitman requested that Plaintiffs go "check on Kristine."  Plaintiffs understood Defendant Whitman to be referring to Kristine Constantino who resided at a home near the Kettenpom airstrip.

32. Despite having the aforementioned information regarding the 911 call, Defendant Whitman did not inform Plaintiffs that the caller had been whispering "help me" repeatedly.  Nor did Defendant Whitman share the CHP dispatcher's opinion that the caller was attempting not to be heard.  Rather, Defendant Whitman told Plaintiffs that the 911 call was likely a phone malfunction due to the recent inclement weather.

33. Soon thereafter, Plaintiffs drove to the Constantino residence in their truck.  Plaintiffs had no safety concerns nor any reluctance to following Defendant Whitman's request because Defendant Whitman had not advised them that a whispering "help me" distress call had been received from the Constantino residence.

34. After arriving at the Constantino residence, Plaintiff James Gund stayed in the truck and Plaintiff Norma Gund went up to the residence to contact Kristine Constantino.

35. After a short period of time, Plaintiff James Gund heard a commotion coming from the residence.  Plaintiff James Gund exited his truck and approached the residence to check on his wife.  As Plaintiff James Gund got near the front door, he could see a male Plaintiffs now believe to have been Tomas Gouverneur attacking Plaintiff Norma Gund.

36. Specifically, Plaintiff James Gund saw Tomas Gouverneur holding Plaintiff Norma Gund down and saw Gouverneur proceed to cut his wife's throat with a knife.  Plainfff James Gund then ran to the door and entered the house in an attempt to help his wife.

37. As Plaintiff James Gund entered the home, Tomas Gouverneur attacked him.

38. While Plaintiff James Gund was being attacked, Plaintiff Norma Gund was able to get away and was able to drive their vehicle to the Kettenpom store in an effort to get help.

39. Plainiff James Gund was tased and punched repeatedly by Tomas Gouverneur.

//

/

40.  While being assaulted, Plaintiff James Gund saw a motionless body on the floor of the residence with a bag over its head.  Plaintiff James Gund thereupon believed that the motionless individual was deceased and that Tomas Gouverneur was going to attempt to kill him.

41.  Tomas Gouverneur placed his knife by Plaintiff James Gund's throat and managed to cut him.  Plaintiff James Gund was however able to grab the knife with his hand and disarm Tomas Gouverneur.

42.  Plaintiff James Gund was then able to escape and ran to his house through the woods to get to a vehicle.  As he was running to his house, Plaintiff James Gund saw Tomas Gouverneur flee the scene.

43.  Plaintiff James Gund was able to drive to the Kettenpom store to get help.

44.  When Plaintiff James Gund arrived at the store, he found his wife and thereafter called 911 to report the incident, giving a description of Tomas Gouverneur and the Gouverneur's vehicle.

## FIRST CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983
### (Against Defendant Whitman and DOES 1-20)

45. Plaintiffs reallege and incorporate as if fully stated herein, each and every allegation contained in paragraphs 1 through 44 of the Complaint.

46. Defendant Whitman and DOES 1-20 violated Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution by placing them in known or reasonably foreseeable danger with deliberate indifference to Plaintiffs' personal and physical safety.

47.  Defendant Whitman and DOES 1-20 violated Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution by asking Plaintiffs, who were untrained civilians, to physically go check on a 911 caller who had been whispering "help me" repeatedly–a caller who could not be reached despite call back attempts and who a CHP dispatcher believed was attempting to avoid being heard.

//

/

1    48. Defendant Whitman and DOES 1-20 further violated Plaintiffs' right to substantive

2    due process by providing Plaintiffs with misleading and incorrect information concerning the

3    nature of the subject 911 call.   Specifically, Plaintiffs' vulnerability and exposure to danger was

4    enhanced by Defendant Whitman's misrepresentation regarding the risks they faced when he

5    asked Plaintiffs to check on Kristine Constantino.

6    49. The conduct of Defendant Whitman and DOES 1-20 affirmatively placed Plaintiffs

7    in a position of danger by creating and exposing Plaintiffs to a danger which they would not have

8    otherwise faced but for his action.

9    50. Defendant Whitman and DOES 1-20 acted with deliberate inference when they

10   disregarded the known or obvious consequences of their conduct.

11   51. By and through doing the aforementioned, a special relationship between Defendant

12   Whitman, DOES 1-20 and Plaintiffs was created as by and through Defendant Whitman's

13   conduct, to wit, requesting that Plaintiffs respond to a 911 call by checking on Kristine

14   Constantino and misrepresenting the nature of the 911 call when doing so, Defendant Whitman

15   and DOES 1-20 took affirmative action which contributed to, increased or changed the risk of

16   harm to Plaintiffs.

17   52. By and through doing the aforementioned, Defendant Whitman and DOES 1-20

18   breached the duty of care owed Plaintiffs that was reflective of the special relationship created.

19   53. As a proximate result of the conduct of Defendant Whitman and DOES 1-20,

20   Plaintiffs were seriously injured.

21   54. Defendants' conduct as alleged herein was despicable conduct and was carried on by

22   Defendants with a wilful and conscious disregard of the rights and safety of Plaintiffs.

23   Defendants' conduct subjected Plaintiffs to cruel and unjust hardship in conscious disregard of

24   Plaintiffs' rights.

25   ////

26   ///

27   //

28   /

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS
## 42 U.S.C. § 1983
## (Against Defendant Trinity County)

55. Plaintiffs reallege and incorporate as if fully stated herein, each and every allegation contained in paragraphs 1 through 54 of the Complaint.

56. The conduct of Defendant Whitman and DOES 1-20, i.e., requesting that Plaintiffs physically investigate a 911 call wherein the caller had been whispering "help me" repeatedly, where the caller was later unreachable and where the CHP dispatcher had indicated an opinion that the caller was attempting to avoid being heard, deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution.

57. This aforementioned conduct of Defendant Whitman and DOES 1-20 was the result of training, instruction, longstanding departmental practice, policy and custom which constitutes the standard operating procedure of the County of Trinity. Among other things, Defendant Trinity County failed to adequately train Defendant Whitman and DOES 1-20 with respect to when, if ever, deputies may request that civilians respond to a 911 call for aid and how deputies should themselves respond to a 911 call for aid.

58. Defendant Trinity County has a long standing practice or custom of approving and ratifying its deputies improper use of civilians to respond to dangerous emergency situations. Defendant Whitman and DOES 1-20 were acting pursuant to training, instruction, longstanding departmental practice, policy and custom when they requested that Plaintiffs physically investigate a 911 call wherein the caller had been whispering "help me" repeatedly, the caller was later unreachable and that the CHP dispatcher had indicated an opinion that the caller was attempting to avoid being heard.

//////
/////
////
///
//
/

59.  On or about January 21, 1997, Plaintiffs are informed, and therefore believe, that Carole Laag, a civilian, was murdered by Haskell Hall after Trinity County Sheriff's deputies asked her to assist them in extricating Hall from his residence.  Defendant Trinity County therefore had actual knowledge that persons employed by the Trinity County Sheriff's Department had, prior to March 13, 2011, asked civilians to assist them in responding to possible emergency situations and therefore knew or should have known that policies or procedures governing requesting that civilians respond to 911 calls were needed in order to prevent injury to citizens.

60.  Defendant Trinity County, its agents or employees, were  aware of the aforementioned deficiencies in training, instruction, longstanding departmental practice, policy and custom but nonetheless failed to correct the deficiencies despite having the authority to do so.  This failure to train Defendant Whitman and DOES 1-20 or create adequate, polices, procedures, customs and standard operating procedures amounts to deliberate indifference to Plaintiffs' constitutional rights and were the moving force behind their injuries.

61.  As a result of the conduct of Defendant Whitman and DOES 1-20, which constituted violations of Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution, and was done pursuant to  training, instruction, longstanding departmental practice, policy and custom of Defendant Trinity County, Plaintiffs suffered serious injury.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983**
**(Against Defendant Trinity County)**

62. Plaintiffs reallege and incorporate as if fully stated herein, each and every allegation contained in paragraphs 1 through 61 of the Complaint.

/////

////

///

//

/

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DEMAND FOR JURY TRIAL

63. The conduct of Defendant Whitman and DOES 1-20, i.e., misrepresenting to Plaintiffs the nature and content of the at issue 911 emergency call and by failing to inform Plaintiffs all facts known regarding the content of the at issue 911 call including, but not limited to, the fact that the caller had been whispering "help me" repeatedly, that the caller was later unreachable and that the CHP dispatcher had indicated an opinion that the caller was attempting to avoid being heard, deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution.

64. This aforementioned conduct of Defendant Whitman and DOES 1-20 was the result of training, instruction, longstanding departmental practice, policy and custom which constitutes the standard operating procedure of the County of Trinity.  Among other things, Defendant Trinity County failed to adequately train Defendant Whitman and DOES 1-20 with respect to when, if ever, deputies may request that civilians respond to a 911 call for aid and how they as deputies should communicate pertinent information regarding such calls to civilians.

65. Defendant Trinity County has a long standing practice of approving and ratifying its deputies improper use of civilians to respond to dangerous emergency situations.  Defendant Whitman and DOES 1-20 were acting pursuant to training, instruction, longstanding departmental practice, policy and custom when they misrepresented to Plaintiffs the nature and content of the at issue 911 call.

66. On or about January 21, 1997, Plaintiffs are informed, and therefore believe, that Carole Laag, a civilian, was murdered by Haskell Hall after Trinity County Sheriff's deputies asked her to assist them in extricating Hall from his residence.  Defendant Trinity County therefore had actual knowledge that persons employed by the Trinity County Sheriff's Department had, prior to March 13, 2011, asked civilians to assist them in responding to possible emergency situations and therefore knew or should have known that policies or procedures governing what information should be conveyed to civilians when civilians are asked to respond to 911 calls.

//

/

67.  Defendant Trinity County was  aware of the aforementioned deficiencies in training, polices, procedures, customs and standard operating procedures but nonetheless failed to correct the deficiencies despite having the authority to do so.  This failure to train Defendant Whitman and DOES 1-20 or create adequate, polices, procedures, customs and standard operating procedures amounts to deliberate indifference to Plaintiffs' constitutional rights and were the moving force behind their injuries.

68.  As a result of the conduct of Defendant Whitman and DOES 1-20, which constituted violations of Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution, and was done pursuant to the training, instruction, longstanding departmental practice, policy and custom of Defendant Trinity County, Plaintiffs suffered serious injury.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983**
**(Against Defendant Haney and DOES 21-40)**

69. Plaintiffs reallege and incorporate as if fully stated herein, each and every allegation contained in paragraphs 1 through 68 of the Complaint.

70.  The conduct of Defendant Whitman and DOES 1-20, i.e., requesting that Plaintiffs physically investigate a 911 call wherein the caller had been whispering "help me" repeatedly, where the caller was later unreachable and where the CHP dispatcher had indicated an opinion that the caller was attempting to avoid being heard, deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution.

71.  This aforementioned conduct of Defendant Whitman and DOES 1-20 was the result of  training, instruction, longstanding departmental practice, policy and custom which constitutes the standard operating procedure of the County of Trinity.  Among other things, Defendant Trinity County failed to adequately train Defendant Whitman and DOES 1-20 with respect to when, if ever, deputies may request that civilians respond to a 911 call for aid and how deputies should themselves respond to a 911 call for aid.

//

/

72.  Defendant Trinity County has a long standing practice of approving and ratifying its deputies improper use of civilians to respond to dangerous emergency situations.  Defendant Whitman and DOES 1-20 were acting pursuant to  training, instruction, longstanding departmental practice, policy and custom when they requested that Plaintiffs physically investigate a 911 call wherein the caller had been whispering "help me" repeatedly, the caller was later unreachable and that the CHP dispatcher had indicated an opinion that the caller was attempting to avoid being heard.

73.  On or about January 21, 1997, Plaintiffs are informed, and therefore believe, that Carole Laag, a civilian, was murdered by Haskell Hall after she was asked by Trinity County Sheriff's deputies to assist them in extricating Hall from his residence.  Defendant Trinity County therefore had actual knowledge that persons employed by the Trinity County Sheriff's Office had, prior to March 13, 2011, asked civilians to assist them in responding to possible emergency situations and therefore knew or should have known that policies or procedures governing requesting that civilians respond to 911 calls were needed in order to prevent injury to citizens.

74.  Defendant Haney and DOES 21-40 were  aware of the aforementioned deficiency in training, instruction, longstanding departmental practice, policy and custom but nonetheless failed to correct the deficiency despite having the authority to do so.  This failure to train Defendant Whitman and DOES 1-20 or create adequate polices, procedures, customs or standard operating procedures amounts to deliberate indifference to Plaintiffs' constitutional rights and were the moving force behind their injuries.

75.  As a result of the conduct of Defendant Whitman and DOES 1-20, which constituted violations of Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution, and was done pursuant to  training, instruction, longstanding departmental practice, policy and custom of Defendant Trinity County, Plaintiffs suffered serious injury.

76.  The conduct of Defendant Haney and DOES 21-40 as alleged herein was despicable conduct and was carried on by Defendant Haney and DOES 21-40  with a wilful and conscious disregard of the rights and safety of Plaintiffs.  Defendants' conduct subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983**
**(Against Defendant Haney and DOES 21-40)**

77. Plaintiffs reallege and incorporate as if fully stated herein, each and every allegation contained in paragraphs 1 through 76 of the Complaint.

78. The conduct of Defendant Whitman and DOES 1-20, i.e., misrepresenting to Plaintiffs the nature and content of the at issue 911 emergency call and by failing to inform Plaintiffs all facts known regarding the content of the at issue 911 call including, but not limited to, the fact that the caller had been whispering "help me" repeatedly, that the caller was later unreachable and that the CHP dispatcher had indicated an opinion that the caller was attempting to avoid being heard, deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution.

79. This aforementioned conduct of Defendant Whitman and DOES 1-20 was the result of longstanding training, instruction, departmental practice, policy and custom which constitutes the standard operating procedure of the County of Trinity. Among other things, Defendant Trinity County failed to adequately train Defendant Whitman and DOES 1-20 with respect to when, if ever, deputies may request that civilians respond to a 911 call for aid and how they as deputies should communicate pertinent information regarding such calls to civilians.

80. Defendant Trinity County has a long standing practice of approving and ratifying its deputies improper use of civilians to respond to dangerous emergency situations. Defendant Whitman and DOES 1-20 were acting pursuant to training, instruction and longstanding departmental practice, policy and custom when they misrepresented to Plaintiffs the nature and content of the at issue 911 emergency call and failed to inform Plaintiffs all facts known regarding the content of the at issue 911 call.

////

///

//

/

81.  On or about January 21, 1997, Plaintiffs are informed, and therefore believe, that Carole Laag, a civilian, was murdered by Haskell Hall after Trinity County Sheriff's deputies to asked her to assist them in extricating Hall from his residence.  Defendant Haney and DOES 21-40 had actual knowledge that persons employed by the Trinity County Sheriff's Department had, prior to March 13, 2010, asked civilians to assist them in responding to possible emergency situations and therefore knew or should have known that dramatically different policies or procedures governing requests that civilians respond to 911 calls were needed in order to prevent injury to citizens.

82.  Defendant Haney and DOES 21-40 were  aware of the aforementioned deficiency in training, instruction, longstanding departmental practice, policy and custom but nonetheless failed to correct the deficiency despite having the authority to do so.  This failure to train Defendant Whitman and DOES 1-20 or create adequate polices, procedures, customs or standard operating procedures amounts to deliberate indifference to Plaintiffs' constitutional rights and were the moving force behind their injuries.

83.  As a result of the conduct of Defendant Whitman and DOES 1-20, which constituted violations of Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution, and was done pursuant to the to training, instruction and longstanding departmental practice, policy and custom of Defendant Trinity County, Plaintiffs suffered serious injury.

84.  The conduct of Defendant Haney and DOES 21-40 as alleged herein was despicable conduct and was carried on by Defendant Haney and DOES 21-40  with a wilful and conscious disregard of the rights and safety of Plaintiffs.  Defendants' conduct subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights.

WHEREFORE, Plaintiffs pray for judgment as follows:

1.  Compensatory and general damages in the amount of at least $10,000,000;

2.  For punitive damages where permissible by law in an amount appropriate to punish Defendants for their conduct and deter Defendants' conduct;

3.  Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

4.  For such other and further relief as the court deems proper.

Dated: March 6, 2013                ZWERDLING, BRAGG & MAINZER, LLP

By:               /S/

BENJAMIN H. MAINZER
Attorneys for Plaintiffs, James and Norma Gund

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on each cause of action alleged herein.

Dated: March 6, 2013                ZWERDLING, BRAGG & MAINZER, LLP

By:               /S/

BENJAMIN H. MAINZER
Attorneys for Plaintiffs, James and Norma Gund

Zwerdling Bragg
& Mainzer, LLP
804 Third St.
Eureka, CA 95501
(707) 445-9628

Page 16
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DEMAND FOR JURY TRIAL