1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

10

11  JAMES GUND, ET AL.,

12              Plaintiffs,              No. 2:13-cv-0452-TLN-CMK

13        vs.

14  COUNTY OF TRINITY, ET AL.,

15              Defendants.              ORDER

16  _____/

17

18        This matter is before the Court on County of Trinity, Sherriff Bruce Haney, and

19  Corporal Ron Whitman's (hereinafter collectively referred to as "Defendants") Motion to

20  Abstain and/or Motion to Dismiss.  (ECF No. 10.)  Plaintiffs James Gund and Norma Gund

21  (hereinafter collectively referred to as "Plaintiffs") have filed an opposition to Defendants'

22  motion.  (ECF No. 17.)  The Court has carefully considered the arguments presented by both

23  parties.  For the reasons below, the Court GRANTS IN PART and DENIES IN PART

24  Defendants' motion.[1]

25  ///

26  ///

27  _____
    [1]      This matter was submitted without oral argument on July 8, 2013.  (Minute Order, ECF
28  No. 19); *see also* E.D. Cal. Local Rule 230(g).

1

I.   FACTUAL AND PROCEDURAL BACKGROUND

On December 5, 2011, Plaintiffs commenced and continue to prosecute an action in Trinity County Superior Court arising out of the same facts as alleged herein. Plaintiffs allege that they were contacted by Defendant Whitman (hereinafter referred to as "Whitman") and requested they "check on" a neighbor regarding a 911 call.  Plaintiffs drove together to their neighbor's house, and thereafter were attacked and injured by a third party Tomas Gouvernuer.  (Comp., ECF No. 1.)

Discovery in the state court case is well underway.  The depositions of Plaintiffs have been completed, a protective order has been submitted to facilitate discovery, and Plaintiffs have conducted written discovery, as well as sought intervention of the court over other discovery.  Plaintiffs have previously sought leave to amend their state court complaint to add additional causes of action, including a violation of 42 U.S.C. § 1983, but withdrew both motions prior to adjudication.

Plaintiffs subsequently filed their Complaint in federal court on March 6, 2013. (ECF No. 1.)  Defendants contend that Plaintiffs claim is barred by both the *Younger* and the *Colorado River* abstention doctrines.  (Mem. Supp. Mot. Dismiss, ECF No. 11.)  Alternatively, Defendants contend that Plaintiffs fail to state a claim and ask this Court to dismiss Plaintiffs claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 11.)  Plaintiffs argue that abstention is not appropriate and request that if the Court finds that the federal case would interfere with the state court case that the Court order a stay in lieu of abstaining.  (ECF No. 17.)  Additionally, Plaintiffs oppose Defendants' 12(b)(6) motion.

II.   STANDARDS OF LAW

**A. Younger Doctrine**

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971).  Accordingly, federal courts are well cautioned that sensitivity must be given to "the legitimate interests of both State and National Governments, and . . . the National Government, anxious though it may be to

2

vindicate and protect federal rights and federal interests, [must] always endeavor[] to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44. However, *Younger* and its progeny should not be regarded as blind deference to states' rights or an abrogation of the federal courts' "virtually unflagging obligation" to adjudicate claims within its jurisdiction. *Colorado River Water Conservation Deist. v. United States*, 424 U.S. 800, 817 (1976); *see also Younger*, 401 U.S. at 44. Instead, the federal courts are required to engage in a delicate balancing process in order to determine when *Younger* abstention is appropriate.

The following three requirements must be satisfied before a federal court may properly invoke the *Younger* abstention doctrine: "(1) ongoing state judicial proceedings; (2) implication of an important state interest in the proceedings; and (3) an adequate opportunity to raise federal questions in the proceedings." *World Famous Drinking Emporium Inc., v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987).

### B. Colorado River Doctrine

Generally, district courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. In certain exceptional circumstances, however, a district court may decline to exercise, or postpone the exercise of, its jurisdiction in favor of a concurrent state court proceeding involving identical issues to those raised in the federal suit. *See Moses H. Cone v. Mercury Constr.*, 460 U.S. 1, 14−15 (1983) (citing *Colorado River*, 424 U.S. at 813−18). Thus, where "considerations of wise judicial administration" warrant, an action in federal court may be stayed or dismissed under the *Colorado River* doctrine in deference to that state court proceeding. *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1367−68 (9th Cir. 1990) (citing *Colorado River*, 424 U.S. at 817).

The court determines whether the requisite "exceptional circumstances" exist under the Colorado River doctrine by balancing the following factors: (1) whether either court has assumed jurisdiction over a res, (2) the relative convenience of the forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) whether state or federal law controls, (6) whether the party is attempting to

1  forum shop, (7) whether the state court proceedings are adequate to protect the federal litigant's

2  rights, and (8) whether the state court proceedings are parallel.  *See Nakash v. Marciano*, 882

3  F.2d 1411, 1415−17 (9th Cir. 1989).  The weight given to any one factor may vary greatly,

4  depending upon the circumstances of the case.  *See Moses Cone*, 460 U.S. at 16.  "No one

5  factor is necessarily determinative; a carefully considered judgment taking into account both

6  the obligation to exercise jurisdiction and the combination of factors counseling against that

7  exercise is required."  *Travelers*, 914 F.2d at 1367 (quoting *Colorado River*, 424 U.S. at

8  818−19).  In determining whether to grant a stay, the balance weighs heavily in favor of the

9  exercise of jurisdiction.  *See Moses Cone*, 460 U.S. at 16.

10         **C.  Motion to Dismiss**

11         Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed

12  for failure to state a claim upon which relief may be granted.  "Dismissal can be based on the

13  lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

14  legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In

15  determining the adequacy of the pleading, the Court must determine whether a plaintiff would

16  be entitled to some form of relief if the facts alleged in the complaint were true.  *See Ashcroft v.*

17  *Iqbal*, 556 U.S. 662, 678 (2009); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

18  However, the court is "not bound to accept as true a legal conclusion couched as a factual

19  allegation."  *Ashcroft*, 556 U.S. at 678 (internal quotations omitted).  Moreover, the factual

20  matter must state a claim to relief that is plausible on its face.  *Id.*  "A claim has facial

21  plausibility when the plaintiff pleads factual content that allows the court to draw the

22  reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility

23  standard is not akin to a probability requirement, but it asks for more than a sheer possibility

24  that a defendant has acted unlawfully."  *Id.* (internal quotations omitted).

25         A complaint will not be dismissed under 12(b)(6) "unless it appears beyond

26  doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to

27  relief."  *Yamaguchi v. Dep't of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997) (quoting

28  *Lewis v. Telephone Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996)).  "All allegations

4

of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337−38 (9th Cir. 1996).

III.   ANALYSIS

Defendants allege that Plaintiffs' claim is barred by both the *Younger* and *Colorado River* abstention doctrines and alternatively should be dismissed because it fails to state a claim.  (ECF No. 11.)  The Court shall address each of Defendants' contentions starting with Defendants' 12(b)(6) motion.

**A.  Plaintiff's § 1983 Claims**

**i.  Plaintiffs Claim Against Defendant Whitman**

Generally, "the Fourteenth Amendment's Due Process Clause . . . does not confer any affirmative right to governmental aid" and "typically does not impose a duty on the state to protect individuals from third parties." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) (citations and alterations omitted).  The two exceptions to this rule involve either a custodial relationship (not applicable here), or where "the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known and obvious danger[.]'" *Id.* at 971−72 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198−202 (1989)) (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)).  To determine whether an official affirmatively placed an individual in danger, plaintiff must plead and prove: (1) affirmative actions of the official that placed the individual in danger he otherwise would not have faced; (2) whether the danger was known or obvious; and (3) whether the officer acted with deliberate indifference to that danger. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062−64 (9th Cir. 2006).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Board of Cnty. Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410 (1997).

Defendants argue that Plaintiffs have not alleged facts supporting that Whitman knew of the risk to Plaintiffs.  This Court has considered the facts alleged by Plaintiffs and finds that when these allegations are taken as true and construed in the light most favorable to

5

1   Plaintiffs, as the nonmoving party, they support Plaintiffs' allegations that Whitman was aware

2   or should have known of the risk.  For example, Plaintiffs allege:

3
4          26. CHP dispatcher Walker communicated to Trinity County dispatcher
           Morrison that the female caller was whispering "help me" over and over and
5          that when CHP dispatcher Walker had prompted the caller for her location, the
           female caller stated she was at the end of the Kettenpom air strip.
6          27. CHP dispatcher Walker also communicated to Trinity County dispatcher
           Morrison her opinion that the 911 caller had been whispering in an attempt to
7          avoid being heard.
           28. After receiving the aforementioned information from the CHP, Trinity
8          County dispatcher Morrison tried to dial the telephone number provided to the
           CHP dispatcher by the unknown female caller. Trinity County dispatcher
9          Morrison was unable to reach the caller as there was no answer at the telephone
           number the caller had previously provided.
10         29. Trinity County dispatcher Morrison then communicated to Defendant Trinity
           County Sheriff's Corporal Ron Whitman what had transpired.
11

12   (ECF No. 1 at ¶¶ 26−29.)  Thus, if dispatcher Morrison conveyed to Whitman that the caller

13   had been whispering help me, sounded as if she was trying to not be overheard, and was

14   subsequently unable to be reached, it is reasonable to conclude that Whitman was aware of the

15   likelihood of a dangerous situation.  Further, if Whitman was aware of this possibility, his

16   subsequent request for Plaintiffs to go to the caller's residence would constitute a deliberate

17   indifference to Plaintiffs' safety as well as the affirmative action that caused Plaintiffs' injuries.

18   Thus, Plaintiffs have met their burden.

19          Defendants also contend that Whitman is immune from this suit based on

20   qualified immunity.  Specifically, Defendants contend that Plaintiffs cannot show that

21   Whitman's conduct violated clearly established law.  (ECF No. 11 at 9.)

22          The doctrine of qualified immunity protects government officers who do not

23   knowingly violate the law from civil liability.  *Gasho v. United States*, 39 F.3d 1420, 1438 (9th

24   Cir. 1994).  Qualified immunity is a generous standard designed to protect "all but the plainly

25   incompetent or those who knowingly violate the law."  *Burns v. Reed*, 500 U.S. 478, 495

26   (1991) (citation omitted).  A law officer can establish qualified immunity by demonstrating (1)

27   that the law governing the officer's conduct was not clearly established at the time of the

28   challenged actions, or (2) that under the clearly established law, an officer could reasonably

6

have believed that the alleged conduct was lawful.  *See Somers v. Thurman*, 109 F.3d 614, 617 (9th Cir. 1997); *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (observing that police officers "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")

It is well established that "the Constitution protects a citizen's liberty interest in her own bodily security."  *Kennedy*, 439 F.3d at 1061 (citing *Ingraham v. Wright*, 430 U.S. 651, 673−74 (1977); *Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir. 1989)).  Furthermore, as previously discussed, "it is well established that, although the state's failure to protect an individual against private violence does not generally violate the guarantee of due process, it can where the state action affirmatively place[s] the plaintiff in a position of danger, that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced."  *Id.* (internal quotations omitted); *see also DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 197, 201 (1989); *Wood*, 879 F.2d at 589−90.  As such, the preexisting law provided Whitman with fair warning that his conduct was unlawful, and thus Whitman is not immune from liability.  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

### ii.  Plaintiffs' Claim Against the County of Trinity

Plaintiffs filed claims against Defendant County of Trinity (hereinafter referred to as "the County") alleging liability based on allegations that (1) the County has "a long standing practice or custom of approving and ratifying its deputies' improper use of civilians to respond to dangerous emergency situations" and (2) the complained of conduct is the result of the County's failure to adequately train its employees.  (ECF No. 1 at ¶¶ 58, 64−65.)  Defendants contend that the two "isolated incidents" cited by Plaintiffs are insufficient to establish a long standing practice or custom.  (ECF No. 11 at 10.)

Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and its progeny, a plaintiff may hold a municipality liable under § 1983 if his injury was inflicted pursuant to city policy, regulation, custom, or usage.  *Chew v. Gates*, 27

F.3d 1432, 1444 (9th Cir. 1994).  The existence of a city policy may be established in one of

three ways:

> First, the plaintiff may prove that a city employee committed the alleged
> constitutional violation pursuant to a formal governmental policy or a
> longstanding practice or custom which constitutes the standard operating
> procedure of the local governmental entity.  Second, the plaintiff may establish
> that the individual who committed the constitutional tort was an official with
> final policy-making authority and that the challenged action itself thus
> constituted an act of official governmental policy.  Whether a particular official
> has final policy-making authority is a question of state law.  Third, the plaintiff
> may prove that an official with final policy-making authority ratified a
> subordinate's unconstitutional decision or action and the basis for it.

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342,

1346−47 (9th Cir. 1992) (citations and internal quotations omitted)).  Plaintiffs need only

establish one of these three circumstances to move forward with a § 1983 claim.  *Id.*  Assuming

they do, Plaintiffs must then demonstrate that the municipal policy "caused" the constitutional

deprivation.  *Id.*  A municipal policy "causes" injury where it is the "moving force" behind the

violation.  *Chew*, 27 F.3d at 1444 (citing *Monell*, 436 U.S. at 690−91, 694).  In addition, the

Supreme Court has held that the inadequacy of police training may serve as the basis for § 1983

liability <u>only</u> where the failure to train amounts to deliberate indifference to the rights of

persons with whom the police come into contact.  *City of Canton, Ohio v. Harris*, 489 U.S. 378,

388 (1989) (emphasis added).  In applying the "deliberate indifference" standard, the Supreme

Court has offered the following guidance:

> [t]he issue in a [failure-to-train case] is whether that training program is
> adequate;  and if it is not, the question becomes whether such inadequate
> training can justifiably be said to represent "city policy." . . . [I]t may happen
> that in light of the duties assigned to specific officers or employees the need for
> more or different training is so obvious, and the inadequacy so likely to result in
> the violation of constitutional rights, that the policymakers of the city can
> reasonably be said to have been deliberately indifferent to the need.

*Id.* at 390.

       Here, Plaintiffs have alleged liability pursuant to a long standing practice of

using civilians to respond to dangerous emergency situations.  In support of this contention,

they have alleged facts concerning a previous 1997 incident in which a civilian was murdered

1  after the County's Sheriff Department asked for her assistance in extricating a suspect from his

2  residence. (ECF No. 1 at ¶ 66.) Defendants argue that the 1997 incident combined with the

3  incident at issue are over a decade a part and do not suffice to support a long standing policy.

4  (ECF No. 11 at 10−11.)   Although, Plaintiffs only present two incidents in support of their

5  claim, the time frame over which these two incidents span does support the plausibility of their

6  claim that a long standing policy exists.  Further, Plaintiffs have stated that the alleged policy is

7  the reason that they were contacted and put into the dangerous situation that resulted in their

8  injuries.  Lastly, the injuries that resulted from the alleged practices are sufficient to allege an

9  obvious need for training on the matter.  Thus, although Plaintiffs have alleged minimal facts

10  concerning the alleged policy and the obviousness of its shortcomings, the Court finds that they

11  are sufficient to survive Defendants' 12(b)(6) motion as to the County's liability.  *See*

12  *Yamaguchi*, 109 F.3d at 1480 (holding a complaint will not be dismissed under Fed. R. Civ. P.

13  12(b)(6) "unless it appears beyond doubt that <u>plaintiff can prove no set of facts</u> in support of his

14  claim that would entitle him to relief") (emphasis added).

15                    **iii.  Plaintiffs' Claim Against Defendant Sheriff Haney**

16                    Plaintiffs have filed a claim against Defendant Sheriff Haney (hereinafter

17  referred to as "Haney") in his official capacity alleging the same theories of liability presented

18  against the County.  Defendants contend that the claims against Haney should be dismissed

19  because the governmental entity is the real party in interest, and the claims against Haney are

20  essentially duplicative of the claims against the County.  (ECF No. 11 at 10.)  In support of this

21  contention, Defendants cite *Monell* for the proposition that local government units are

22  "persons" for purposes of § 1983 and thus "[t]here is no longer a need to bring official-capacity

23  actions against local government officials . . . [because] local government units can be sued

24  directly for damages and injunctive or declaratory relief."  *Kentucky v. Graham*, 473 U.S. 159,

25  167 n. 14 (1985).  Plaintiffs have not addressed why the claims against Haney should not be

26  dismissed in their opposition.  Accordingly, Plaintiffs are said to have conceded this argument.

27  *See Abdulkhalik v. City of San Diego*, No. 08CV1515, 2009 WL 3514547, at *4 (S.D. Cal. Oct.

28  26, 2009) (holding that defendant waived all arguments regarding sanctions when it failed to

1   brief them in opposition to the motion for compliance, even though plaintiff raised those issues

2   in his brief).  In any event, this Court finds Defendants' argument persuasive.

3            Official-capacity suits "generally represent only another way of pleading an

4   action against an entity of which an officer is an agent." *Kentucky*, 473 U.S. at 165−66

5   (quoting *Monell*, 436 U.S. at 690 n. 55).  "As long as the government entity receives notice and

6   an opportunity to respond, an official-capacity suit is, in all respects other than name, to be

7   treated as a suit against the entity." *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471−72

8   (1985)). These suits are not against the official personally, instead the real party in interest is

9   the entity. *Id.*  "Thus, while an award of damages against an official in his personal capacity

10  can be executed only against the official's personal assets, a plaintiff seeking to recover on a

11  damages judgment in an official-capacity suit must look to the government entity itself." *Id.*

12  As such, because Plaintiffs' claims are merely duplicative of the claims against the County, this

13  Court finds that the County is the appropriate defendant and grants Defendants' motion to

14  dismiss the claims against Sheriff Haney, as they were brought against him in his official

15  capacity.

16       **B.  Abstention**

17           Defendants have moved this Court to abstain from hearing this case under the

18  *Younger* and *Colorado River* abstention doctrines.  Defendants contend that this case meets the

19  requirements set forth for *Younger* abstention because (1) there is ongoing state litigation

20  concerning this matter; (2) it implicates an important state interest concerning the training of

21  police officers; and (3) Plaintiffs' § 1983 claim could be litigated in the state court proceedings.

22  (ECF No. 11 at 4−5.)  Alternatively, Defendants argue that this case meets the requirements for

23  abstention set forth in *Colorado River* and should be stayed based on considerations of "wise

24  judicial administration, giving regard to conservation of judicial resources and comprehensive

25  dispositions of litigation."  (ECF No. 11 at 5 (quoting *Fireman's Fund Ins. Co. v. Garamendi,

26  et al.*, 790 F.Supp. 938, 963 (N.D. Cal. 1992).)

27           Defendants have failed to consider the Ninth Circuit's holding in *Gilbertson v.

28  Albright*, 381 F.3d 965 (9th Cir. 2004).  In *Gilbertson*, the Ninth Circuit considered whether

*Younger* applies to a § 1983 claim seeking damages.  In analyzing the applicable Supreme Court precedent, it stated:

> [t]he Supreme Court did not decide the extent to which *Younger* applies to a federal action seeking only damages because it held that a district court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding.  In so holding the Court embraced the Third Circuit's rule that a district court must stay rather than dismiss claims that are not cognizable in the parallel state proceeding.  It allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts to assume jurisdiction where jurisdiction properly exists.

*Id.* at 974 (internal quotations and citations omitted).  Here, Plaintiffs are exclusively seeking monetary damages; further, their § 1983 claim is not cognizable in their state court claim. Defendants contend that because Plaintiff could have brought this claim in state court that they should be estopped from bringing it in federal court.  However, the fact that a claim could have been brought in state court "is no reason for a district court to abstain from adjudicating a cognizable § 1983 claim."  *Monaghan v. Deakins*, 798 F.2d 632, 635−36 (3d Cir. 1986) *aff'd in part, vacated in part*, 484 U.S. 193 (1988).  The Supreme Court has consistently held that federal courts have a "virtually unflagging obligation to exercise their jurisdiction except in those extraordinary circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest."  *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (internal quotations omitted); *see also Colorado River*, 424 U.S. at 817.

In determining whether to abstain or grant a stay, the balance weighs heavily in favor of the exercise of jurisdiction.  *See Moses Cone*, 460 U.S. at 16.  There is no doubt that interference with state proceedings is at the core of the comity concern that animates *Younger*, *see Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431 (1982), and that such interference may be avoided through issuing a stay.  *See Gilbertson*, 381 F.3d at 968 (holding that "federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed").  Accordingly, this Court finds that the appropriate course of action is to issue a stay pending resolution of the state court litigation.

11

IV.     CONCLUSION

        For the foregoing reasons, Defendants' Motion for Abstention and/or Motion to Dismiss (ECF No. 10) is GRANTED IN PART and DENIED IN PART.  Therefore, it is hereby

        ORDERED AND ADJUDGED that

1.  Defendants' Motion to Dismiss claims four and five against Defendant Sheriff Haney is GRANTED.

2.  Defendants' Motion to Dismiss all other claims pursuant to Rule 12(b)(6) is DENIED.

3.  Defendants' Motion for Abstention pursuant to *Younger* and/or *Colorado River* is hereby DENIED.

4.  This case is stayed pending the resolution of the associated state court litigation.

        IT IS SO ORDERED.

DATED:  July 29, 2013

_____
Troy L. Nunley
United States District Judge

12